**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS,**
**EASTERN DIVISION**

| | |
|---|---|
| GABRIEL PRIYEV, individually and on behalf of all others similarly situated, | <u>JURY TRIAL DEMANDED</u> |
| Plaintiff, | |
| v. | Case No.: 12-CV-01467 |
| GOOGLE INC. and DOES 1-20, | |
| Defendants. | Honorable Amy J. St. Eve |

<u>**SECOND AMENDED CLASS ACTION COMPLAINT**</u>

Plaintiff, individually and on behalf of all others similarly situated, upon both personal knowledge and information and belief, and following investigation by counsel, alleges as follows against Defendants, Google Inc. ("Google") and Does 1-20:

<u>INTRODUCTION</u>

1.      This case seeks relief for Plaintiff and similarly situated users of Google's internet search services in the State of Illinois whose Google.com internet search queries and histories were stored in Google's records and shared with third-parties, in violation of applicable law and Google's terms of use.

2.      Google tracks and stores the internet web pages that its users visit, and the search terms they use to get there from Google.com. When doing so, by default, Google associates users' web browsing activity and search queries with their uniquely identifiable information such as their Google email ("Gmail") addresses by maintaining user Web Histories, and Google transmits such information via Referer Headers, defined below, to third parties for commercial use, including for advertising purposes, such as through Google's Adwords program, which

constitute a principle source of Google's revenue.

3.      Google has at relevant times promised these Gmail users that they can permanently delete such "Web History," and has promised not to unilaterally share such information with third-parties for commercial use. But, Google has broken these promises. Google's sharing of Web History with third-parties also runs contrary to user expectations, contrary to Google's promises to protect its user's privacy, and contrary to Google's promises that user's search queries are their own.

4.      Plaintiff seeks to enjoin Google from sharing search terms and results with third-party individuals and entities, and commensurate restitution and damages.

## JURISDICTION, VENUE AND PARTIES

5.      Plaintiff is an individual and a citizen of the State of Illinois.

6.      Google is a corporation with its principal place of business in Mountain View, California, where transactions or conduct giving rise to Plaintiff's claims occurred and where Google routinely does business. Google maintains offices in this judicial District. Google's Chicago office is one of the largest Google offices in the United States which on information and belief conducts business related to Google AdWords and Google Analytics, which are at issue in this case.

7.      Defendant Does 1-20 are officers, principals, agents, managers, and subsidiaries of Google, and/or other persons or entities sued by fictitious names who authorized, directed or otherwise exerted operational control over the unlawful conduct alleged herein.

8.      The Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). Based on the total value of the claims and relief sought by Plaintiff individually and on behalf of the Class, the total amount in controversy in this case exceeds $5,000,000.

9.      Venue is proper before the Court under 28 U.S.C. § 1391(b) because, inter alia, a substantial part of the events or omissions at issue occurred in this judicial District; indeed the transactions of Plaintiff and the Class giving rise to Plaintiff's claims occurred principally in the State of Illinois including this judicial District.  Plaintiff also states that facts giving rise to his claims, including his activity on Google.com, occurred not only in the State of Illinois, but also as set forth below in the State of California.

FACTUAL ALLEGATIONS

10.      Google is an internet search portal that at relevant times has controlled roughly seventy percent of the search engine market and processed approximately 11,000 searches per second.

11.      Google has become the leading search engine on the internet, inter alia, by touting its privacy protections for its users.

12.      Internet searching is not typically done in the public eye.  Plaintiff and the Class typically use Google to conduct searches on their own, individually or in private, and expect that their searches will be kept private by Google except as agreed to by Plaintiff and the Class, i.e., as stated in Google's contract or terms of service which, for purposes herein, include its published policies, frequently asked questions, and definitions that set forth how Google will provide users with an internet search experience, as described below.

13.      Google's terms of use have endowed Plaintiff and the Class with rights to their Google search terms and search results (herein, "results" includes reference to a record of visits to third-party websites), considers their search terms and search results to be their property, and have set forth the boundaries of what Google can and cannot do with their search terms and search results and consumer expectations thereby.

14.     Consistent with expectations of consumers like Plaintiff, Google's terms have identified internet search terms as personal information in the privacy policy for Google's Web History service.  That policy likewise has set forth parameters of what Google does with users' Web History.

15.     Google's conduct set forth herein violates the scope of what its terms of use have allowed it to do with user search terms, and has violated Plaintiff and other Class members' expectations that their Google searches will remain private except as conveyed by Google's terms of use.

16.     Further, as Google has admitted, "If users believe that the text of their search queries could become public knowledge, they may be less likely to use the search engine for fear of disclosure of their sensitive or private searches for information or websites."  Declaration of Matt Cutts, at ¶ 24, filed February 17, 2006, in *Gonzales v. Google*, Case No. 5:2006-MC-80006 (N.D. Cal. 2006).  Here, irrespective of whether searches are publicized to the world at large, or without reference to the searcher's name, to the owners of internet sites that Plaintiff and the Class have navigated to, the same principle applies.

17.     Had Plaintiff known of Google's conduct described herein, Plaintiff would have used Google to conduct internet searches less frequently or would have used other internet browsers to conduct internet searches.

### *Referer Headers and Google Analytics*

18.     When an internet user enters a search query into Google.com, Google has at relevant times recorded the search, by assigning a unique "URL" or internet address to the search results page that contains the search terms entered by the user and identifies the webpage address from which the search was made.  This record is called the "Referer Header."  The user's Referer

Headers and Google.com search history contain the same information, generated in the same way, and are or were at relevant times then stored in Google's own files and shared, by Google, with third-party owners of other websites.

19.     Specifically, when an internet user has entered a search query into Google.com and clicks on a search result to a third-party website, Google has created a Referer Header, which reveals the search terms and the site address that got the user to that website, and stores the Referer Header in its files.  At relevant times Google has then made the Referer Header freely available to the owner of that website.

20.     Thus, if Plaintiff typed the search query "Priyev" into Google.com, Google will then produce a Referer Header recording the search results and the search term "Priyev."  If a user then opened one of the search results, such as Acme.com, the owner of Acme.com may receive a report from Google which reveals Plaintiff's and other users' search terms.

21.     The user's search queries, search results and/or and Referer Headers form a substantial part of what Google's terms of service identify or define as the user's "Web History," which Google keeps of every user it can, by default.

22.     Courtesy of Google, a website owner may or did at relevant times opt to receive reports containing a history of all Web History search terms, or Referer Headers, which were used to visit the owner's website through Google.com.  Such information provides valuable business intelligence to third-party website owners, including owners who may use such information to buy advertising on Google.com (including using Adwords).

23.     At relevant times Google has regularly and periodically produced these detailed user search term and search result reports to third-party owners of web pages through Google's

free service, Google Analytics, which individuals and entities can use for a multiplicity of reasons.

24.     Google Analytics and Referer Headers vastly increase Google's value and enables Google to create, establish and enhance its business relationships with countless website owners and other users of Google Analytics, including third-parties who then use Google Analytics results to plan targeted online advertising campaigns.  In fact, Google induces third-parties to sign-up for its for-pay Google "Adwords" advertising services by promoting and linking its Google Analytics reports with its Adwords service.  Google Analytics thus provides a springboard or marketing entree to Adwords, which puts considerable money in Google's pocket and induces advertisers to pay money to Google whereby they can receive enhanced user data, including user search queries.  And Google Analytics provides additional information to website owners by giving them information to track where, when and how users come to their website.

25.     Google also earns hefty profits from Adwords itself, whereby advertisers choose a combination of words that automatically call-up a paid advertisement on Google.com when a user's search queries match those words.

### Google's Promises and Breaches

26.     Google has told its users that it understands the importance of internet privacy and that it provides its services in furtherance of that end.  As communicated by Google to its users, Google's terms of service or its search services on Google.com are purportedly designed to protect users and ensure privacy in connection with their search experience, to provide transparency to its users, to reflect strong privacy standards and practices, to give users meaningful choices to protect their privacy, and to responsibly hold user information.

27.     Google has had at relevant times a Privacy Policy specific to its Web History service (the "Web History Privacy Policy"), which has been in effect, for example, when Plaintiff and other members of the Class have searched the internet while they were logged into their Gmail accounts, and/or from their Google search bars while logged into Google email ("Gmail"), for years up to the date of filing this Complaint.

28.     Google's relevant online terms and privacy policy have defined and represented "Web History," and "Personal Information," as follows:

> WEB HISTORY
>
> Personal Information
> Web History records information about the web pages you visit and your activity on Google, including your search queries, the results you click on, and the date and time of your searches in order to improve your search experience and display your web activity. Over time, the service may also use additional information about your activity on Google or other information you provide us in order to deliver a more personalized experience.

29.     Google has promised that it will use Web History solely for the benefit of the user or with the user's consent. Google promised to Plaintiff and the Class at relevant times:

> Web History uses the information from your web history or other information you provide us to improve your Google search experience, such as improving the quality of your search results and providing recommendations. In addition to enabling the Web History functionality, the information we collect when you use Web History may be shared among all of our services in order to provide you with a seamless experience and to improve the quality of our services. We will not disclose this information to other companies or individuals, except in the limited circumstances described in our main Google Privacy Policy, or with your consent.

http://www.google.com/history/privacyfaq.html?hl=en. This promise applies to all Web History content, regardless of whether the content contains information that on its face is sensitive or identifies the individual searcher.

30.     Google's terms of service expressly provide that information entered by a user on

Google.com, including Plaintiff and other Class members' search terms, remain the property of the user. The Terms of Services state that "Google acknowledges and agrees that it obtains no right, title or interest from you (or your licensors) under these Terms in or to any Content that you submit, post, transmit or display on, or through, the Services…." http://www.google.com/accounts/TOS. "Content" is broadly defined and includes and is clearly meant to include written text and search queries used on Google.com.

31.     Google's Privacy Policy further promises that Google will only share personal information with third-parties (1) with opt-in consent; (2) with "…subsidiaries, affiliated companies or other trusted businesses or persons for the purpose of processing personal information on our behalf. We require that these parties agree to process such information based on our instructions and in compliance with this Policy and any other appropriate confidentiality and security measures."; or (3) upon "good faith belief that access, use, preservation or disclosure of such information is reasonably necessary" to satisfy applicable law, enforce terms of service, deal with fraud, or protect against imminent harm. Privacy Policy, http://www.google.com/intl/en/privacypolicy.html.

32.     Google's Privacy Policy at relevant times further represented, "We may share with third parties certain pieces of aggregated, non-personal information, such as the number of users who searched for a particular term, for example, or how many users clicked on a particular advertisement. Such information does not identify you individually." Google defined "aggregated, non-personal information" as "information that is recorded about users and collected into groups so that it no longer reflects or references an individually identifiable user."

33.     Google's conduct has breached these privacy promises. Contrary to these terms, Google has provided individual search queries, non-aggregated search queries, search queries

and results containing personal information, Web History including "search queries" or search terms and "results," and Referer Headers, to third-parties and advertisers, including via Google Analytics, and not for the benefit of the user experience, i.e., not "to provide you with a seamless experience and to improve the quality of our services" as Google's terms have promised, but rather to enhance Google's profit and position by peddling user Web History and search queries to third-party website owners via Google Analytics reports, in order to market and expand its Google Adwords advertising services for Google's financial gain.

34.    Google has also treated users' search queries as its own property and has usurped its limited license to use their search terms, contrary to its above-described term of service.

35.    In addition, because Web History and search queries or results constitute "personal information," Google's employment of Google Analytics reports breaches its above-referenced "main Google Privacy Policy," wherein Google has previously agreed to share users' personal information only in limited circumstances, none of which apply to the facts at issue: (1) with user consent – opt-in consent is required; (2) to Google "subsidiaries, affiliated companies or other trusted businesses or persons for the purpose of processing personal information on [Google's] behalf"; and (3) as reasonably necessary to follow applicable law and the like. Privacy Policy, http://www.google.com/intl/en/privacypolicy.html.

36.    First, Google shared Plaintiff and other Class members' search queries, results, Personal Information, and Referer Headers with third-parties without obtaining consent from Plaintiff and the Class.

37.    Second, Google shared Plaintiff and other Class members' search queries, results, and Personal Information with third-parties who process said information as they see fit and not on Google's behalf.

38.     Furthermore, Google's Web History Privacy Policy has stated that "[o]ver time, the service may use additional information about your activity on Google or other information you provide us in order to deliver a better search experience." http://www.google.com/intl/en/privacypolicy.html.   However, in reality, Google has collected and shared Plaintiff and other Class members' Referer Headers and Web History to benefit advertisers, and third-parties who use Google Analytics to improve their marketing and advertising strategies, and to pad Google's value and profits, not to benefit the users of Google.com who entered the search terms.

39.     Indeed, Google has continually disclosed Plaintiff and other Class members' Web History, or search terms and results, with other companies and individuals who used Google Analytics or who received Referer Headers as described more fully above.

40.     Due to the aforementioned conduct, Google shared or offered to share Plaintiff's Web History and/or Personal Information with virtually anyone who operated or maintained a website that Plaintiff visited using Google.com and with third-party advertisers, for a price.

41.     In becoming the dominant search engine in the market, Google has continued to promise its users that it can be counted on as a beacon of privacy protection.  Google's published policy documents presently provide, "At Google, we are keenly aware of the trust our users place in us, and our responsibility to protect their privacy. We believe transparency and choice are the foundations of privacy."  To this end, Google's January 26, 2010 privacy video represents, "We don't sell user information to other companies."

***Google Has Continued To Store And Use Web History Despite Its
Promise That Web History Can Be Removed***

42.     Additionally, though Google collects Web History on its users by default, Google has represented that users of its service can delete or turn off their Web History from their account.

43.     For example, Google has at relevant times stated "[d]eleting web history from your Google Account will erase all items from your web history and stop your web history from being recorded in the future.  You can also remove individual items without deleting all of your web history."    http://www.google.com/support/accounts/bin/answer.py?hl=en&answer=54067; see also   http://www.google.com/intl/en/privacypolicy.html;   see also http://www.google.com/history/privacyfaq.html?hl=en ( stating "[i]f you remove items [from your Web History], they will be removed from the service….").

44.     Such terms conveyed at relevant times that when Web History is deleted, Google no longer holds onto it or uses it, but rather, "erases," "deletes" and "removes" it from its records.

45.     Yet, Google has offended privacy concerns and taken property of Google users whose Web History and Personal Information (including Referer Headers and search queries/results), Plaintiff reasonably believes, Google continued to store in its files, and transmit to third-parties via Referer Headers or Google Analytics, even after a user has deleted or turn off his or her Web History.

46.     Google likewise has promised that users "can choose to stop storing [their] web activity in Web History either temporarily or permanently." http://www.google.com/history/intl/en/privacy.html.    In violation of this provision, on information and belief Google did not stop storing web activity when the user so chose but

instead has thereafter continued and/or continues to transmit Referer Headers or search queries or results containing Web History to third-parties, including via Google Analytics.

*The Personal Nature of Search Queries and Referer Headers*

47.     While Google has provided third-parties with Referer Headers, at such times Google has known that Referer Headers can frequently contain sensitive personal information.

48.     As stated by Matt Cutts, once Google's Senior Staff Software Engineer and head of the Webspam group:

> There are ways in which a search query alone may reveal personally identifying information. For example, many internet users have experienced the mistake of trying to copy-and-paste text into the search query box, only to find that they have pasted something that they did not intend. Because Google allows very long queries, it is possible that a user may paste a fragment of an email or a document that would tie the query to a specific person. Users could also enter information such as a credit card, a social security number, an unlisted phone number or some other information that can only be tied to one person. Some people search for their credit card or social security number deliberately in order to check for identity theft or to see if any of their personal information is findable on the web.

Declaration of Matt Cutts at pg. 9, *Gonzalez v. Google,* Case No. 5:2006-mc-80006, N.D. Cal. 2006, Dkt. No. 14.

49.     Mr. Cutt's statement was submitted as part of a declaration opposing a U.S. Department of Justice's subpoena for "anonymous" search query data. Mr. Cutt further stated, "If users believe that the text of their search queries could become public knowledge, they may

be less likely to use the search engine for fear of disclosure of their sensitive or private searches for information or websites." *Id.*

50.     Google further explained in opposing the Department of Justice's motion to compel user search queries, that, "Google users trust that when they enter a search query into a Google search box, not only will they receive back the most relevant results, but that Google will keep private whatever information users communicate absent a compelling reason."   Google's Opposition to the Government's Motion to Compel at page 1, *Gonzalez v. Google,* Case No. 5:2006-mc-80006, N.D. Cal. 2006, Dkt. No. 12.   Google further explained, "The privacy and anonymity of the service are major factors in the attraction of users….If users believe that the text of their search queries into Google's search engine may become public knowledge, it only logically follows that they will be less likely to use the service."  *Id.*

51.     Google further argued, "This is no minor fear because search query content can disclose identities and personally identifiable information such as user-initiated searches for their own social security or credit card numbers, or their mistakenly pasted but revealing text." *Id.*

52.     The Court agreed with Google, and prevented the government from receiving Google user search queries, stating:

> The Government contends that there are no privacy issues raised by its request for the text of search queries because the mere text of the queries would not yield identifiable information. Although the Government has only requested the text strings entered … basic identifiable information may be found in the text strings when users search for personal information such as their social security numbers or credit card numbers through Google in order to determine whether such information is available on the Internet. The Court is also aware of so-called

'vanity searches,' where a user queries his or her own name perhaps with other information. Google's capacity to handle long complex search strings may prompt users to engage in such searches on Google. Thus, while a user's search query reading '[username] stanford glee club' may not raise serious privacy concerns, a user's search for '[user name] third trimester abortion san jose,' may raise certain privacy issues as of yet unaddressed by the parties' papers. This concern, combined with the prevalence of Internet searches for sexually explicit material — generally not information that anyone wishes to reveal publicly — gives this Court pause as to whether the search queries themselves may constitute potentially sensitive information.

*Gonzales v. Google, Inc.*, 234 F.R.D. 674, 687 (N.D. Cal. 2006).

53. Other internet savvy professionals have also noted the personal nature of search terms:

Taken alone, the Google search box is an exquisitely intimate repository of user information. "People treat the search box like their most trusted advisors," says Kevin Bankston, the Electronic Frontier Foundation (EFF) attorney. "They tell the Google search box what they wouldn't tell their own mother, spouse, shrink or priest." Think about your most recent queries, say, about your "anal warts" or "inability to love in marriage," or "self-hatred," or your interest in the mechanics of "making a pipe bomb." The search box is as good a place as any to understand how the Googleplex keeps tabs on its users. When you do a search, "cookies" installed on your computer record your IP address (a series of unique numbers

that may be used to identify your computer), so Google can, in many contexts, identify a user. And it can do so with any of its applications.

http://www.theinvestigativefund.org/investigations/rightsliberties/1274/the_cloud_panopticon.

54. In 2006, America Online released a data of 20 million search queries over a three-month period, which revealed names, addresses, local landmarks, medical ailments, financial information, and social security numbers. The release "underscore[d] how much people unintentionally reveal about themselves when they use search engines," according to *The New York Times*. The *Times* further was able to identify individual AOL users using the vanity searches they had conducted and non-vanity search queries, and cookies. Michael Barbaro and Tom Zeller, Jr., "A Face Is Exposed for AOL Searcher No. 4417749," *The New York Times*, August 9, 2006, last accessed on August 3, 2012 at http://www.nytimes.com/2006/08/09/technology/09aol.html?pagewanted=all. AOL "acknowledged that there was information that could potentially lead to people being identified…" *Id.*

55. Google's reaction to the AOL release of search queries was as follows: "Well, [this is] obviously a terrible thing. And the data as released was obviously not anonymized enough, and maybe it wasn't such a good idea to release it in the first place. Speaking for Google, we exist by virtue of the trust of our end users. So if we were to make a mistake to release private information that could be used against somebody, especially if it could be used against them in a way that could really hurt them in a physical way or something like that, it would be a terrible thing." Conversation with Eric Schmidt hosted by Danny Sullivan, http://www.google.com/press/podium/ses2006.html (last visited August 3, 2012).

*Plaintiff's Experience*

56. Plaintiff originally signed up for and began using his Gmail electronic mail account in the fall of 2005, while living in California. Plaintiff's Web History, kept by Google, reinforces this fact, stretching all the way back to September 2006 and identifying and linking his searches during that entire period to Plaintiff's Gmail account. Plaintiff has continued to use the same account name in both California, from the Fall of 2005 through the Spring of 2008, and then in Illinois from the Spring of 2008 until the present.

57. Plaintiff and other users do not want their Gmail account to be linked for third-parties to use their search terms or to any personal information. Plaintiff did not expect that there was any chance that his Gmail account or his personal use of Gmail, or Google searches and search results clicked on while logged into Gmail, would be linked to his search terms, by Web History and/or Referer Headers, for the benefit of advertisers and third-parties.

58. Individuals including Plaintiff and other members of the Class, have used Google's search engine to perform searches that they do not wish other persons, or third-party websites that they go to as a result of a search, to see, that they do not expect such persons or third parties to see, and/or that Google has promised not to share with third-parties without their express consent.

59. Individuals, such as Plaintiff and other members of the Class, have used Google's search engine to find personal information such as web material concerning sensitive health conditions or containing their own names ("vanity searches"), which Google has shared with third-parties through Google Analytics. Plaintiff has regularly engaged in vanity searches (including search queries and clicking on search results), believing the searches to be completely unconnected to his Gmail or Google accounts.

60.     Plaintiff regularly used Google as a portal to other sites. Plaintiff would type in the name of the website he wished to visit. Moreover, Plaintiff regularly used Google search (i.e., search queries and search results) to connect to all of his financial websites including his banking websites.

61.     Plaintiff regularly searched for (and clicked on search results for) personal health related information. Plaintiff used Google, while signed into Gmail, to searching for sensitive and highly private information regarding his health and wellness issues.

62.     Google shared Plaintiff's search queries and results with third-parties, and is in the business of doing so as set forth more fully herein.

### Google's Control Over Referer Header Content

63.     While Referer Headers are standard web browser functions, Google's use and provision of Referer Headers for third-party advertising (and without filtering or deleting user information) appears to go well beyond the intended use of this function.   See internet community Hypertext Transfer Protocol--HTTP /1.1, http://tools.ietf.org/html/rfc2616.

64.     In fact, the Protocol indicates that Referer information is for the server's benefit to provide service: in the words of the  Hypertext Transfer Protocol for internet functions, "The Referer request-header allows a server to generate lists of back-links to resources for interest, logging, optimized caching, etc. It also allows obsolete or mistyped links to be traced for maintenance." *Id*. at 14.36.  Referer headers have also been used to provide browsing security. According to the industry Protocol, contrary to Google's practice, "Because the source of a link might be private information or might reveal an otherwise private information source, it is strongly recommended that the user be able to select whether or not the Referer field is sent." *Id*. at 15.1.3.

65.     Google knows of, and in the past has utilized, technologies to create records that keep searches private by ensuring that Referer Headers log the website found via a search, but block the search term used to get to the site which may contain personal information.

66.     For example, in approximately November 2008 Google began utilizing Asynchronous JavaScript and XML ("AJAX") technology.  AJAX caused search results pages to include search terms only after a "#" sign appearing in the search record, which enabled search information not to be recorded; using AJAX, the web page owner's Google Analytics report would merely state www.google.com as the Referer Header.  Despite the obvious privacy benefits to its users, Google has abandoned this approach and gone to extreme measures to ensure that search terms are included in Referer Headers in order to serve its business interests vis a vis web page owners, who benefit from such business intelligence – a service which Google now provides free of charge via its Google Analytics service.

67.     Later, on or about October 18, 2011, Google announced a change in policy for how it handled search terms embedded in Referer Headers.  *See* http://googleblog.blogspot.com/2011/10/making-search-more-secure.html (last visited August 3, 2012).  Under the new policy, Google removes search terms from Referer Headers for searches entered by users who are logged-in to any Google Account service, such as Gmail or Google Docs, which users like Plaintiff sign-up for in order to use Google's services consistent with Google's herein-described terms.  Since that change, for users not logged in to their Google Account, Google has continued to transmit search terms, and even when logged in, search terms of users who click on advertisements included in or next to the regular search results continue to be transmitted to third-parties via Referer Header.

68.     Google's public experiments with and changes to Referer Headers and search term disclosure demonstrate that Google is and has been completely in control of whether search terms are shared with third parties via Referer Headers.  Thus, Google's choice to share search terms through Referer Headers is not just how the Internet works; and, under their current model Google effectively sells users' search terms to paying advertisers.

69.     Due to Google's above-described conduct, Plaintiff and the Class are entitled to commensurate declaratory and injunctive relief, plus appropriate actual, compensable, and statutory restitution and damages.

70.     Google has used Plaintiff and the Class members' search queries and results constituting their Web History to market its services via Google Analytics and to retain advertising business from third-party website owners, which has greatly inured to Google's financial benefit.

71.     As set forth above, Plaintiff and the Class never consented to Google's above-described conduct and Google failed to provide them with notice thereof.

CLASS ACTION ALLEGATIONS

72.     Plaintiff brings this action individually as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Classes:

> GOOGLE ACCOUNT CLASS.  All persons in the United States who, at any time between October 25, 2008 and the present when Google was transmitting search query or result links to third-parties via Referer headers, used Google.com to perform a search and clicked on a search result.
>
> WEB HISTORY SUBCLASS.  All persons in the United States for whom Google has maintained Web History from four years preceding the filing of this

Complaint.[1]

Excluded from the Class are any members of the judiciary presiding over this action, Plaintiff's Counsel, and Google, its officers, directors, and employees, and the immediate families and legal representatives of same.

73.     Plaintiff reserves the right to amend or modify the Class definition in connection with his motion for class certification and/or as a result of discovery.

74.     The Class is so numerous that joinder of all members is impracticable.  While the exact number of the Class members is unknown to Plaintiff at this time, such information can be easily ascertained through Google's records.

75.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Class and has retained counsel experienced in complex class actions.

76.     Google's unlawful conduct as set forth herein is generally applicable with respect to the Class as a whole, so that final injunctive relief or corresponding declaratory relief is appropriate.

77.     Common questions of law or fact exist as to all members of the Class and predominate over questions affecting only individual Class members, including, for example:

   a.     Whether Google has shared Plaintiff and other Class members' Referer Headers, and search queries or results with third-parties;

   b.     Whether Google continues to use or store information that is part of Web History after the user chooses to delete, remove or to no longer store with Google such information;

   c.     Whether Google's conduct offends or violates its own terms of service;

---

[1] Herein, references to the "Class" are to members of the Class and Subclass unless stated otherwise.  Plaintiff intends to amend the class definition including the class period at issue following discovery, if appropriate.

d.    Whether Google's conduct constitutes breach of its contract or its implied contract with Plaintiff and the Class;

e.    Whether Google's conduct breached its duty of good faith and fair dealing to Plaintiff and the Class;

f.    Whether Google's conduct violates the Electronic Communications Privacy Act;

g.    Whether Google's conduct violates the California UNFAIR COMPETITION LAW;

h.    Whether Google is unjustly enriched by its herein-described conduct;

i.    Whether Plaintiff and the Class are entitled to damages;

j.    Whether Plaintiff and the Class are entitled to restitution; and

k.    Whether Plaintiff and the Class are entitled to injunctive relief.

78.    Plaintiff's claims are typical of the claims of other Class members.

79.    A class action is an appropriate and superior method for fairly and efficiently adjudicating and managing this controversy, which arises out of Google's common course of conduct with respect to the Class as a whole.

80.    Google's herein-described terms of use, policy and practice pertaining to the facts at issue are uniformly applicable to Plaintiff and the Class, making this case highly manageable and well-suited to class-wide adjudication.

## CAUSES OF ACTION

81.    Plaintiff pleads the following Causes on behalf of himself, and on behalf of the Class, and seeks the following remedies in the alternative to the extent consistent with applicable law and without regard to an ultimate determination of choice of law.

COUNT I
BREACH OF CONTRACT

82.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein, and alleges this Cause on behalf of himself and the Class.

83.     Google offered Plaintiff and the Class use of its Google, Web History, Gmail, and search services pursuant to its above-described terms of service, which Plaintiff and the Class accepted as part of Google's contract to use its services.  The search experience of Plaintiff and the Class is governed by Google's contract which has included its above-described terms.

84.     Plaintiff and the Class used Google.com's search services pursuant to and thus in acceptance of Google's relevant terms of service, including without limitation its Web History policy, as follows.

85.     First, as part of recording user Web History and providing Gmail service, Google has provided as follows in its Web History Privacy Policy (which is part of the contract):

> Web History records information about the web pages you visit and your activity on Google, including your search queries, the results you click on, and the date and time of your searches in order to improve your search experience and display your web activity. Over time, the service may also use additional information about your activity on Google or other information you provide us in order to deliver a more personalized experience.
>
> Web History uses the information described above to give you a more personalized search experience. This information will be securely transmitted to Google's servers and stored in association with your Google Account information in order to provide the service.

http://www.google.com/history/intl/en/privacy.html.

86. Google has breached these provisions of its Web History Privacy Policy by using and transmitting Plaintiff and other Class members' Web History for purposes other than as promised, i.e., to improve third-parties' marketing and to enhance Google's value and advertising revenues, by sharing Plaintiff and Class member Web Histories with third-parties unaffiliated with Google through the Google Analytics service.

87. Second, Google promised in its Web History Privacy Policy that users "can choose to stop storing [their] web activity in Web History either temporarily or permanently." http://www.google.com/history/intl/en/privacy.html. In violation of this provision, on information and belief Google did not stop storing web activity when the user so chooses but instead continued to transmit Referer Headers and Web History to third parties.

88. Third, Google promised that "[d]eleting web history from your Google Account will erase all items from your web history and stop your web history from being recorded in the future. You can also remove individual items without deleting all of your web history." Google further represented, "If you remove items [from your Web History], they will be removed from the service and not be used to improve your search experience". See http://www.google.com/support/accounts/bin/answer.py?hl=en&answer=54067; http://www.google.com/intl/en/privacypolicy.html; http://www.google.com/history/privacyfaq.html?hl=en.

89. Yet, Google broke this promise by continuing to store or record Web History in its files, permanently or for a substantial period of time, even after a user deleted his or her Web History.

90. Fourth, at relevant times Google's main Privacy Policy (also part of its contract)

expressly limited the circumstances in which Google can share Plaintiff and other Class members' personal information. Google agreed to only share Google.com user's personal information in the following limited circumstances: (1) with user consent – opt-in consent is required; (2) to Google "subsidiaries, affiliated companies or other trusted businesses or persons for the purpose of processing personal information on [Google's] behalf"; and (3) as reasonably necessary to follow applicable law and the like. Privacy Policy, http://www.google.com/intl/en/privacypolicy.html.

91.     Google breached this provision of the main Privacy Policy by sharing Plaintiff and other Class members' search terms, Web History, and personal information therein, via transmittal of Referer Headers and search queries and results to third-parties including through Google Analytics, in circumstances not warranted under the Privacy Policy and without user consent (or opt-in consent), as more fully described above.

92.     Fifth, Google further stated in its main Privacy Policy that if Google uses personal "information in a manner different than the purpose for which it was collected, then we will ask for your consent prior to such use." http://www.google.com/privacy/privacy-policy.html. Google purportedly collected information to provide its users with its services.

93.     Yet, in violation of this promise, Google used Plaintiff and other Class members' personal information to increase its revenues by transmitting the information to third-parties as described above. Google did not obtain consent when collecting information for this undisclosed purpose and therefore breached its Privacy Policy.

94.     Finally, Google represented that it may share with third-parties only certain aggregated, non-personal, group information such as the number of users who searched for a particular term, for example, or how many users clicked on a particular advertisement, but

breached this term too by sharing Plaintiff and other Class members' search queries and Web History, as set forth above.

95.     The above-described provisions were material terms of the contract between Plaintiff and the Class, and Google.

96.     Google breached the terms of the contract by sharing Plaintiff and other Class members' Web History, Personal Information, Referer Headers, or search queries and results, including as set forth above, with third-party individuals and entities purely for its own commercial benefit and profit. Google shared Plaintiff's personal and non-personal Google and Gmail (i.e., searches using a Google search bar while logged into Gmail) search queries and search results which he used or clicked on, and Web History, with third-parties, in violation of these provisions, as set forth above.

97.     Plaintiff and the Class did not authorize such conduct, and Google is unjustly enriched as a result thereof.

98.     Plaintiff and the Class members' Web History, Personal Information, and Referer Headers, which Google has provided to third-parties and continues to store or use even after a user attempts to remove or delete such information, is the property of Plaintiff and the Class.

99.     Google's terms of service merely endow Google with a license to use such information, which is limited by the above-described specific terms that Google has breached.

100.     Google did not provide Plaintiff and the Class with consideration due for its above-described uses of their information in violation of Google's contractual terms.

101.     Google's above-described uses of Plaintiff and the Class' information were not bargained for and exceed what is allowed pursuant to the parties' contract.

102.     At relevant times, Plaintiff would not have conducted searches on Google.com in

the same way, had he known that his search queries and results and Referer Headers were passed along to owners of websites visited from such searches.

103.    Plaintiff and other Class members used Google's services in accordance with the contract.

104.    As a result of Google's above-described breaches, Plaintiff and the Class were damaged and are entitled to commensurate relief or restitution.

COUNT II
BREACH OF CONTRACT
(BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING)

105.    Plaintiff repeats and realleges each of the preceding paragraphs as if fully set forth herein, and brings this Cause on behalf of himself and the Class.

106.    Google entered into a form, take-it-or-leave it contract with Plaintiff and the Class for their use of related services.

107.    As part of the contract, Google owed Plaintiff and the Class a duty of good faith and fair dealing.

108.    Google delivered search service, and maintained Web History, pursuant to the contract, whereby Plaintiff and other Class members' Web History, Personal Information, search queries, and Referer Headers would be stored and used only according to Google's published terms, which promise that their information is private, and is their property, as set forth more fully above.

109.    After Plaintiff and the Class and Google entered into the contract, Google began sharing Plaintiff and other Class members' search terms and results and Referer Headers with third-parties in ways unfair to and unauthorized by Plaintiff and the Class and by Google's terms as described more fully above.  In fact, Google profited by using their search terms and Referer

Headers to increase the quantity and/or quality of its for-pay Google advertising services, such as Google Adwords, that Google offers to third-parties, as more fully set forth above, and Google has reaped advertising profits by providing search query and Referer Headers as set forth above.

110. Google usurped its discretion, and took advantage of the lack of discretion by Plaintiff and the Class, in interpreting its above-described terms of service to effect its above-described conduct, to the detriment of the property rights and expectations of Plaintiff and the Class.

111. Google, by sharing Plaintiff and other Class members' search query information without notice or consent, as set forth above, breached its duty of good faith and fair dealing to Plaintiff and the Class.

112. Additionally, Google has also kept, and continued to use, e.g., for purposes of Google Analytics, Web History information even after users deleted their Web Histories and selected Google's option to request that such Web History no longer be stored.

113. Google, by keeping and continuing to use users' Web History information after they delete Web History and/or select Web History to no longer be recorded, breached its duty of good faith and fair dealing to Plaintiff and the Class.

114. Google's above-described sharing, storage and use of search terms has frustrated a material purpose and protection of Google's Web History and search engine, i.e., where users are, according to Google, able to type in and/or control sensitive personal information under the guise of privacy.

115. Google's continual sharing of Plaintiff and other Class members' Web History and Personal Information has prevented Plaintiff and the Class from receiving the benefits of the contract, which provides: that Plaintiff and the Class may use Google.com whereby their

Personal Information is shared in only limited circumstances; that Web History is kept only for their benefit and as expressly stated in Google's terms; and that they can delete and choose not to have such information stored.

116.    Google's practice and policy of sharing Plaintiff and other Class members' Web History, Personal Information and search queries violated its duty of good faith and fair dealing to Plaintiff and the Class, and caused damage to Plaintiff and the Class as a result.

117.    Google was unjustly enriched by its aforementioned conduct and Plaintiff and the Class are entitled to restitution.  Google should account for revenues and profits it improperly collected from its transmission of Referer Headers and Web History information, including from increased Google Adwords business, and should have a constructive trust imposed with respect to such monies until further order of the Court.

## COUNT III
## BREACH OF CONTRACT IMPLIED IN LAW

118.    Plaintiff repeats and realleges paragraphs 1-81 as if fully set forth herein, and alleges this Cause on behalf of himself and the Class.

119.    Google has knowingly, voluntarily and willfully received and retained benefits by sharing Plaintiff and other Class members' Web History, Personal Information and search queries or results via Referer Headers and/or Google Analytics, as set forth above, under circumstances that would render it unjust to allow Google to retain such benefits.

120.    The benefits received by Google from sharing Plaintiff and other Class members' Web History, Personal Information and search queries via Referer Headers and/or Google Analytics were related to the obligation and duty of Google to use such information only as outlined in the Google's Web History Privacy Policy which does not include dissemination to

third parties and in Google's other above-described terms of use, and/or as prescribed by applicable law.

121.    Google uses Google Analytics to share such information in a manner that is not specifically authorized under Google's above-described terms of service.

122.    The search terms and results that Plaintiff and the Class enter into Google.com are Plaintiff and other Class members' property, and Plaintiff and the Class have rights and expectations regarding if or how their search queries and results are to be used and disclosed, as set forth above.

123.    Yet, Google is using Plaintiff and other Class members' Content i.e., their Personal Information, or search terms and results, to increase its advertising revenue via Google Analytics and Google Adwords.

124.    For third-party website owners, search terms and results entered by Plaintiff and the Class on Google.com are not only Plaintiff and other Class members' property, but are profitable marketing information provided courtesy of Google Analytics to induce them to make use of for-pay Google advertising services such as Adwords.

125.    As a result, Google has increased its revenues and profits by peddling Plaintiff and the Class members' Personal Information, Web History, Referral Headers, or search terms or results without notice or their consent.  It would be inequitable for Google to retain these benefits it received from sharing Web Histories, Personal information and search queries belonging to Plaintiff and other Class members as Google shared this information in violation of its own terms of use and representations to Plaintiff and the Class, their rights and reasonable expectations, and applicable law.

126.    Google's above-described conduct violates principles of equity and justice, which

prohibits Google from retaining these above-described benefits.

127. As a result, Plaintiff and other Class members are entitled to disgorgement and restitution of Google's revenues, profits and/or monies received by Google due to Google's use of Plaintiff and other Class members' property i.e., their search terms and results.

COUNT IV
**VIOLATIONS OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT**

128. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein, and alleges this Cause individually and on behalf of the Google Account Class.

129. The Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.* (the "ECPA") applies broadly to anyone providing an electronic communications service. The ECPA defines an electronic communication as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in party by a wire, radio, electromagnetic, photoelectronic or photooptical systems that affects interstate commerce." 18 U.S.C. § 2510(12).

130. The ECPA defines contents of an electronic communication as "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). The search queries and all information contained therein, including without limitation personal information, are contents of the electronic communications as defined by the ECPA.

131. Google operates an "electronic communications service," and provides a "remote computing service" to the public. 18 U.S.C. § 2510(15); 18 U.S.C. § 2711(2).

132. The search queries, Web History and Referer Headers at issue in this case are electronic communications as defined by the ECPA because they involve the transfer of signs, signals, writing, data or intelligence by wire or radio and affect interstate commerce through the transmission of data to users, including as set forth more fully above.

133.    Pursuant to the ECPA, "a person or entity providing an electronic communication service to the public shall not intentionally divulge the contents of any communication (other than one to such person or entity, or an agent thereof) while in transmission of that service to any person or entity other than an addressee or intended recipient of such communication or an agent of such addressee or intended recipient." 18 U.S.C. § 2511(3)(a).

134.    When Google users, including the Plaintiff, enter a search query into their web browser, the users intend that the terms entered be transmitted to and used only by Google and its agents for the purpose of producing the desired search results and in order to provide Web History service to the user. Google and its agents are the intended recipient of the content of such electronic communications, i.e., the search terms and all information contained therein.

135.    Google's Web History policy explains that the intended recipient of such web search communications is not the third-parties who have received such communications via Referer Headers, as described above.

136.    Google shares the contents of Plaintiff and other Class members' electronic communications with third-parties, website owners, and advertisers, in the form of Referer Headers and through Google's Google Analytics and Adwords services. These third-parties are not intended recipients of the communication. Therefore, Google has violated the ECPA by sharing the content of Plaintiff and other Class members' electronic communications to Google in the form of search queries with non-intended recipients by way of Referer Headers.

137.    Furthermore, Google has shared Plaintiff and other Class members' search queries that are "personal information" with third-parties through Referer Headers and Google Analytics, as set forth above, in violation of its main Privacy Policy and above-stated terms, as set forth above, which prohibit disclosure of search queries and personal information, except in

limited circumstances that are inapplicable here.  Thus, said Policy and terms affirm that the intended recipient of Plaintiff and the Class members' search queries is Google.  Such sharing of information violates the ECPA in this respect also.

138.     Google intentionally discloses the contents of Plaintiff and other Class members' communications such as their search queries and Personal Information as set forth above, for its own commercial benefit (*e.g.,* in order to increase its value and advertising revenue and to increase Google Adwords revenues by appealing to users of Google Analytics), without obtaining consent from Plaintiff or the Class.

139.     Google, by committing the acts and practice alleged above, has continued to divulge the contents of Plaintiff and other Class members' communications to unintended recipients every time they enter a search query into Google.com.

140.     Google, by knowingly divulging contents and search queries of Plaintiff and other Class members' communications stored and maintained electronically on its service, without their authorization, has violated 18 U.S.C. §§ 2702(a)(1) and 2702(a)(2).

141.     As a result, Plaintiff and the Class have been damaged; and Plaintiff requests preliminary and other equitable or declaratory relief and damages pursuant to 18 U.S.C. § 2520.

COUNT V
VIOLATION OF CAL. BUS. & PROF. CODE § 17200, UNFAIR COMPETITION LAW

142.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein, and alleges this Cause individually and on behalf of the Class.

143.     As a result of Google's unfair and unlawful conduct, Plaintiff and the Class lost money or property via Google's practice of providing their search queries, Web History, and Referrer Headers, to third-parties as set forth more fully above.  Google's above-describe terms and conduct provide that this information or Google content is the user's property, have

-32-

monetary value.

144. Google's conduct and decisions giving rise to Plaintiff's claims, on information and belief, in substantial part took place at Google's primary place of business in California. Google, via its Terms of Service choice of law provision, has asserted that the laws of the State of California shall apply to litigation concerning its services.

145. Plaintiff originally signed up for Google's products while he was a resident of California, and used Gmail in California up until the time he moved to Illinois in the spring of 2008.

146. Defendant's acts and practices as alleged herein constitute unlawful and unfair, business practices in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et. seq.*

### *Unlawful Conduct*

147. Google's above-described conduct violates the Electronic Communications Privacy Act, as set forth more fully above.

148. Additionally, California Business & Professions Code § 22576 prohibits Google from violating its own privacy policy as set forth above.  For example, according to Google's own privacy policy at relevant times, Google can only share personal information provided by users of their services in limited circumstances.  Google may share personal information with third-parties with consumer consent, to satisfy applicable law, or to provide it to subsidiaries, affiliated companies or other trusted businesses or persons for the limited purpose of processing personal                  information                  on                  Google's                  behalf. http://www.google.com/policies/privacy/archive/20101003-20111020/ (last modified Oct. 20, 2011, archived version last visited August 3, 2012).

149.    Google has shared Plaintiff and other Class members' search terms, including without limitation personal information as alleged herein, in violation of Google's privacy policy and above-described terms as prohibited by relevant law.

150.    As a result, Google is in violation of the UCL's prohibition against "unlawful" conduct, Cal. Bus. and Prof. Code § 17200 *et seq.*

### Unfair Conduct

151.    In the alternative, Google's conduct, as alleged herein, is oppressive, immoral, unethical, and unscrupulous and caused Plaintiff and the Class substantial injury, in violation of the UCL's prohibition against "unfair" conduct, Cal. Bus. and Prof. Code § 17200 *et seq.*

152.    For example, Google unfairly profits from Plaintiff and other Class members' search terms and personal information without obtaining consent from Plaintiff and the Class.

153.    Google represents its services as a free service for Plaintiff and other Class members and represents that users own their content including search terms, as set forth more fully above.  Without obtaining consent, Google sells and markets their search terms and results, including without limitation personal information, to other individuals and entities that pay Google.  Through this conduct Google is unfairly profiting from the property of Plaintiff and other Class members without obtaining their consent.

154.    The utility of such unfair conduct, if any, is outweighed by the gravity of the consequences to Plaintiffs and the Class.

155.    Google itself has praised and reinforced the value of transparency and privacy of search queries and Web History as set forth more fully above, yet Google has usurped its position to profit from the provision of their search queries and Web History to third-parties.

156.    As a direct and proximate result of Defendant's unlawful and unfair acts, business

practices, and conduct, Plaintiff and other Class members have suffered injury in fact and lost valuable property in the form of his private, personal search terms entrusted to Google.

157.    Plaintiff seeks individual restitution, injunctive relief, and applicable relief allowed under §17200 *et seq*.

COUNT VI
DECLARATORY JUDGEMENT AND
CORRESPONDING INJUNCTIVE RELIEF
28 U.S.C. §§ 2201, 2202

158.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein, and alleges this Cause on behalf of himself and the Class.

159.    Google has violated applicable law as more fully set forth above.

160.    Plaintiff and the Class are entitled to a declaration of their rights in connection with what Google can and cannot do with their Web History, search queries and results, and Personal Information.

161.    Plaintiff and the Class and Google have adverse legal interests, and there is a substantial controversy between Plaintiff and the Class, and Google, to warrant the issuance of a declaratory judgment as to whether Google violated applicable law by its above-described practice of sharing Plaintiff and other Class members' search terms and results or Referer Headers, and whether Google is entitled to share the Web Histories of Plaintiff and the Class with third-parties for its commercial gain, in violation of its preexisting contract and terms of use.

162.    Absent injunctive relief, Google is likely to continue its above-described practices, as Google is endowed with all of the discretion to do as it wishes with Plaintiff and the Class members' information.

163.    As a result of Google's above-described conduct in violation of applicable law,

Plaintiff and the Class are entitled to corresponding injunctive relief, and an order establishing a constructive trust, for the benefit of Plaintiff and the Class, consisting of monies received by Google from its unlawful sharing of Plaintiff and the Class's search terms with third-party persons and entities.

164.    Google's new Terms of Use do not directly address preexisting Web History, changes to Web History, or the issues described above leaving Plaintiff and the Class without any indication of what Google intends to do with the Web Histories belonging to Plaintiff and the Class creating a need for injunctive relief holding Google to the terms of previous contract with and terms of use for Plaintiff and the Class described in detail above.

165.    As a result of Google's above-described conduct in violation of applicable law, Plaintiff and the Class are also entitled to an order requiring Google not to use or store preexisting Web History for purposes of profiting by transmitting their information to third-parties.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays that this Honorable Court enter judgment in favor of Plaintiff and against Google as follows:

a.      Find that this case may be properly maintained as a class action, and appoint Plaintiff as Class representative and Plaintiff's counsel as Class counsel;

b.      Declare the rights of the parties as stated above;

c.      Enjoin Google's above-described conduct and provide injunctive relief as set forth above;

d.      Award Plaintiff and other Class members all statutory, actual and/or compensatory damages permitted by applicable law;

e.    Award equitable monetary relief, including restitution, to Plaintiff and the Class, and require Google to disgorge, for the benefit of Plaintiff and the Class, monies, revenues and/or profits Google received from unlawfully sharing Plaintiff and other Class members' search queries, results and information as set forth above;

f.    Establish a constructive trust, until further order of the Court, consisting of monies Google improperly collected or received from its above-described illicit conduct;

g.    Award reasonable attorney's fees and costs as allowed under all applicable law; and

h.    Award such other further relief to which Plaintiff and the Class are entitled or as the Court deems proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all causes of action and matters so triable.

Respectfully submitted,

GABRIEL PRIYEV, individually and on behalf of all others similarly situated

By:    /s Alex Stepick
          One of Plaintiff's Attorneys

PROGRESSIVE LAW GROUP, LLC
ALEX STEPICK
alex@progressivelaw.com
MARK BULGARELLI
markb@progressivelaw.com
505 N. LaSalle St, Suite 350
Chicago, IL 60654
(312) 787-2717 (voice)

Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I, Alex Stepick, certify that on this 9th day of August, 2012, a true and correct copy of the foregoing PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT was served via the Court's CM/ECF system which will send electronic notification to the attorneys for parties of record at the e-mail addresses on file with the Court.


/s/ Alex Stepick